UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER HANDLEY, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF DONALD E. CLAUSEN, DECEASED,

    Plaintiff,                                            Case No. 04-71920

v.                                                          Hon. John Corbett O'Meara

THE CITY OF TAYLOR, *et al.,*

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court is Defendants' Motion for Summary Judgment, filed June 2, 2006, and Defendant DeGuili's Motion for Summary Judgment, filed June 7, 2006. Plaintiff filed a combined response to both motions on July 10, 2006. The court heard oral argument on January 18, 2007, and took the matter under advisement. For the reasons set forth below, the court grants Defendants' motions.[1]

## BACKGROUND FACTS

Plaintiff Jennifer Handley brought this 42 U.S.C. § 1983 action on behalf of the estate of her son, Donald Clausen, Jr., who died in jail after he was arrested by City of Taylor police

---

[1] The court acknowledges that, at the hearing, Defendant DeGuili expressed a desire to withdraw his motion for summary judgment. DeGuili also filed a motion for substitution of counsel and to withdraw his motion. As discussed below, the court finds that Donald Clausen did not suffer a constitutional deprivation. Given this finding, as a practical matter, the court cannot separate Defendant DeGuili's liability from that of the rest of the Defendants. Therefore, even if the court considers DeGuili's motion to be withdrawn, it grants judgment in his favor *sua sponte*.

officers.  Clausen had a drug and alcohol problem that caused problems for his family.  He lived with his mother and sister, who obtained a personal protection order against him.  His family would occasionally invoke the PPO to have him removed from the home when his conduct became intolerable.  As a result of this (and for other reasons), Clausen had been arrested several times by Taylor police.

On September 12, 2003, Clausen's sister Cara called Taylor police to have Clausen removed from the home.  Cara Clausen and Jennifer Handley allege that after Cara called the police, Clausen swallowed a "handful" of pills, which he identified as morphine.  When the police arrived, Cara Clausen and Handley allege that they both informed Officers Milka and Mandeville that Clausen had taken pills and needed to go to the emergency room or have his stomach pumped.

Officer Mandeville contends, however, that he asked Clausen what medication he had taken and Clausen informed him that he had only taken his prescription medication.  Officer Mandeville's report indicates that "I also asked D. Clausen if he had consumed any illegal drugs, which he stated he had not." Def.'s Ex. D at 2.  Handley testified as follows:

> Q: Did you ever hear the decedent [Clausen] say to anyone, I need to go to the hospital?
> A: No.
> Q: Did you ever hear the decedent say, yes, I took Morphine and I need to go to the hospital?
> A: No.
> Q: Did you ever hear him just say, I took the Morphine?
> A: No.
> Q: Or words to that affect, anything concerning words such as I think I'm going to OD, I'm going to overdose on pills?
> A: No.
>
> * * *

> Q: Did he ever request medical attention from the police?
> A: Not that I know of.  I'm not sure.
> Q: Did you ever hear him request medical attention.
> A: I didn't hear him.
> Q: When he was at your house did you notice anything unusual about him, the decedent, before he was taken out of the house?
> A: No.
> Q: Like his eyes weren't rolling back in his head, were they?
> A: No.
> Q: He was walking okay, wasn't he?
> A: Yes.
> Q: Talking okay?
> A: Yes.

Def.'s Ex. B, J. Handley Dep. at 136-37.

The officers transported Clausen to the Taylor jail at about 6 p.m. on September 12. According to the officers, Clausen appeared "normal." See Def.'s Ex. D.  The arresting officers did tell Cadet Yesta (the booking officer) that Clausen had taken some pills and that Yesta should keep an eye on him.  Yesta noted on the jail log that Clausen should be "watch[ed] closely, possibly high on meds." Def.'s Ex. J.  The arresting officers turned Clausen's medications over to Yesta.

While waiting to be booked, Clausen was given a preliminary breath test, which showed an alcohol level of only .04.  Officer Mandeville asked Clausen if he had consumed alcohol with his medication; Clausen stated that he had not.  Def.'s Ex. D.  Yesta subsequently discovered that one of Clausen's medications had been filled 24 hours earlier and that more pills were missing than should have been.  Yesta questioned Clausen about the missing pills and Clausen told him his sister may have taken them.  Yesta Dep. at 16.  Clausen appeared coherent and gave Yesta no reason to doubt this explanation. Yesta Dep. at 17, 33.  Yesta did inform his supervisor, Lieutenant Zachary, of the missing pills.  Id. at 18.  Zachary told him to keep an eye on Clausen

and not give him any more medication.  Id.  Clausen was placed in a cell to await completion of processing.

At some point, officers noticed Clausen lying on the floor in his cell.  He did not respond when officers called his name.  Yesta rubbed his knuckles over Clausen's sternum, which woke him up.  Yesta asked Clausen if he was alright and Clausen said he was.  Officer Mandeville asked Clausen if he needed to go to the hospital and he said he did not.  See Defs'. Ex. I (Yesta Report).  Clausen asked if he could get something to eat, and was told by the officers to wait a bit longer.  Id.

At approximately 2 a.m., Yesta escorted Clausen to the booking room.  Clausen appeared to be tired, slightly unsteady on his feet, and a bit slow in answering some questions.  Yesta Dep. at 43.  According to Yesta, Clausen was groggy, consistent with being awakened late at night.  Id. at 44-45.  Yesta questioned him and Clausen said he was just tired and that his back (from a car accident) was bothering him.  Id.; See also Def.'s Ex. I.  Yesta asked if he needed medical treatment and Clausen said no.  See Def.'s Ex. L.  As part of the booking process, Yesta asked Clausen if he ever attempted suicide.  Clausen responded that he had.  Yesta then asked if Clausen had any intention of harming himself, and Clausen said no, "that his doctor had changed his medications and that he was no longer suicidal." Def.'s Exs. I, L.  According to another officer, Cadet DeGuili, Yesta expressed some concern that Clausen should have been taken to the hospital because he had ingested some medication.  DeGuili Dep. at 56-57.  DeGuili testified that, at the time, he reassured Yesta that he had done all he could by informing Zachary, who made the judgment that Clausen did not need medical treatment.  Id.

After being booked, Clausen was returned to his cell.  Officers did jail checks at least

every fifteen minutes during the night.  At about 5:40 a.m. Cadet McGuire did a jail check and noticed that Clausen appeared to be in distress and not breathing.  EMS was called and transported Clausen to Heritage Hospital, where he was pronounced dead.  The Wayne County Medical Examiner found that Clausen's death was caused by "citalopram and morphine intoxication. . . . The manner of death is suicide." Defs.' Ex. P.

## LAW AND ANALYSIS

Plaintiff sued the City of Taylor, City of Taylor Police Department, and several individual police officers for failing to provide medical treatment to a pretrial detainee in violation of the Fourteenth Amendment due process clause.  All defendants have moved for summary judgment.    To state a claim pursuant to § 1983, Plaintiff must establish "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." Alkire v. Irving, 330 F.3d 802, 813 (6th Cir. 2003).  The due process clause of the Fourteenth Amendment requires a municipality to provide medical care for pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 545 (1979); Roberts v. Troy, 773 F.2d 720, 723 (6th Cir. 1985).  "A detainee may claim a Fourteenth Amendment violation based upon a state actor's 'failure to prevent harm' in the conditions of confinement  – that is, the failure to take reasonable measures for the safety of the detainee." Schack v. City of Taylor, 177 Fed. Appx. 169 (6th Cir. 2006) (unpublished) (citing Farmer v. Brennan, 511 U.S. 825, 832-34 (1994)).  "Such a claim requires a showing that the state actor knew that there was an 'excessive risk' to the detainee's health or safety, also described as a 'substantial risk of serious harm.'" Id.

> A claim for failure to prevent harm will succeed where prison
> officials act with "deliberate indifference." Farmer, 511 U.S. at

> 828, 114 S.Ct. 1970. Deliberate indifference is akin to criminal recklessness. Weaver, 340 F.3d at 410; see Farmer, 511 U.S. at 837, 114 S.Ct. 1970. It is "a very high standard of culpability, exceeding gross negligence." Ross v. Duggan, 402 F.3d 575, 590 n. 7 (6th Cir.2004) (quotation omitted). The test for deliberate indifference is both an objective and subjective one: the detainee must be subjected to a substantial risk of serious harm, and the prison official must actually know of and disregard the risk. Brown v. Bargery, 207 F.3d 863, 867 (6th Cir.2000).

Id.

In Watkins v. City of Battle Creek, 273 F.3d 682 (6th Cir. 2001), the police arrested Ralph Watkins, who had apparently concealed some cocaine by ingesting it. At the time of Watkins's arrest, officers saw him licking his lips and a pink foamy drool coming from his mouth. One officer spotted a white speck near Watkins's mouth. The officers asked Watkins if he had swallowed any drugs and explained that he could die if he had. The officers offered to take Watkins to the hospital. Watkins denied swallowing drugs and refused medical treatment. Once in jail, Watkins complained of an upset stomach and appeared to be drunk or high. He fell from a chair onto the floor. The officers again offered him medical attention. Watkins denied that he had swallowed drugs and refused medical attention. Later that night, officers found Watkins to be unresponsive in his cell. He was pronounced dead by emergency medical personnel.

Watkins' estate sued the City of Battle Creek and the individual officers pursuant to § 1983. The Sixth Circuit found that summary judgment was properly entered in favor of the defendants on Watkins' Fourteenth Amendment claim. Specifically, the court found that the officers did not act with deliberate indifference to Watkins' medical needs:

> This case does not involve an incapacitated detainee or one who asked for but was refused medical treatment. Plaintiff faults defendants for not forcing medical treatment on Watkins in the face of his repeated denials and plausible explanations. We find

>   that this is insufficient to establish a question of fact on the issue of
>   deliberate indifference.

Watkins, 273 F.3d at 686.

Similar to the decedent in Watkins, Clausen denied needing medical treatment and denied ingesting illegal drugs. Although Clausen's mother and sister contend that they told the arresting officers that Clausen had taken morphine, they do not dispute that Clausen denied this when asked by the officers. Clausen informed the officers that he had taken his prescription medication. Clausen gave the officers no reason to believe that he was suicidal at the time; he also denied wanting to hurt himself when he was booked by Cadet Yesta. The facts do not demonstrate that Defendants were "deliberately indifferent" to Clausen's medical needs; rather, officers took care to keep an eye on Clausen and to ask him if he needed medical attention. See Yesta Dep. at 13-14. Moreover, the jail video does not disclose that Clausen appeared to have a serious medical need.[2] See Defs.' Ex. K.

With the benefit of hindsight, it is possible that the officers could have taken different steps that could have averted Clausen's tragic death. The totality of the circumstances at the time do not, however, demonstrate that Clausen evidenced a serious medical need that Defendants then ignored. See Watkins, 273 F.3d at 686. See also Weaver v. Shadoan, 340 F.3d 398, 412 n. 11 (6th Cir. 2003) (officers' suspicion that decedent may have swallowed cocaine, without more, was "insufficient as a matter of law to give rise to liability for deliberate

---

[2] Cadet DeGuili testified that Cadet Yesta questioned whether Clausen should have been taken to the hospital. Yesta did not ignore this concern, but rather brought it to the attention of his supervisor, Lieutenant Zachary. See Yesta Dep. at 10; DeGuili Dep. at 56-57. Zachary apparently thought that Clausen did not need medical attention. Although Zachary was ultimately mistaken in his judgment, his and Yesta's actions do not rise to the level of deliberate indifference or "criminal recklessness."

indifference"). Accordingly, Plaintiff has not set forth sufficient evidence that Defendants violated Clausen's Fourteenth Amendment rights.

Because the court has found that Plaintiff did not suffer a constitutional deprivation, it is not necessary to address the issues of qualified immunity and municipal liability for failure to train. See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); Watkins, 273 F.3d at 687 ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

## **ORDER**

IT IS HEREBY ORDERED that Defendants' June 2, 2006 motion for summary judgment [docket # 36] is GRANTED.

IT IS FURTHER ORDERED that Defendant DeGuili's June 6, 2006 motion for summary judgment [docket #38] is GRANTED.

        s/John Corbett O'Meara  
        United States District Judge

Dated: January 31, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 1, 2007, by electronic and/or ordinary mail.

        s/William Barkholz  
        Courtroom Deputy Clerk